FRANCISCO RAMOS, Plaintiff and Appellee, v. ROSA and URSELIO QUIÑONES and MARÍA C. STELA DE NIDO, Defendants and Appellees.

No. 7670. Argued July 14, 1939.—Decided January 19, 1940.

*Dubón & Ochoteco,* for appellant; *Heriberto Torres Solá,* for appellees.

Mr. Justice Travieso delivered the opinion of the Court.

The plaintiff, Francisco Ramos, is the owner of an urban property which bounds on its rear, North, with properties of the defendants. It is admitted by both parties that plaintiff's property is higher in relation to defendants' farms; but the defendant, Rosa and Urselio Quiñones deny that their properties are bound to receive the waters that naturally descend from the higher land as alleged by the plaintiff. The defendants have refused to let the surface waters from plaintiff's property run on to theirs. To do this they have erected a cement wall on the boundary of the properties, thereby stopping the passage of the waters which form a pool on plaintiff's property. He prays in his complaint that the defendants be ordered to constitute a legal servitude of surface waters on their property in favor of the plaintiff.

The defendants allege in their answer that the three lots involved in this litigation form a part of an urbanization and have buildings upon them, as well as all the lots bounding with them; that on plaintiff's lot there is a house and garage of concrete and that part of the yard is paved

and there are walls on both sides of the lot; that as a result of the erection of said buildings the rain waters collected on plaintiff's lot "do not flow naturally but on the contrary their course is influenced by the intervention of man"; that the plaintiff is obliged to build on his lot whatever may be necessary to stop the pooling of the waters and if this were not possible he could then demand according to Section 595 of the Revised Civil Code (Section 524, 1930 ed.) the granting of a servitude after paying the corresponding indemnization.

The district court upheld the defendants' contention and rendered judgment in their favor. The plaintiff appealed and alleged three errors which may be summarized as follows:

The lower court erred in holding that Section 488 of the Civil Code (1930 ed.) is applicable only to rural properties and that therefore the rights of the litigants in this suit should be regulated according to the provisions of Section 524.

Section 488 of the Civil Code (1930 ed.) reads as follows:

"Lower tenements are obliged to receive the waters which naturally and without the intervention of man descend from higher tenements, as well as the stone or earth which they carry with them.

"Neither may the owner of the lower tenement construct works preventing the servitudes nor the owner of the higher tenement works aggravating the same."

In his commentaries to Section 552 of the Spanish Civil Code which is the same as Section 488 of ours, Manresa says:

"According to the text of the Code, Section 552 speaks of waters which *naturally and without the intervention of man* flow from higher to lower lands; *the basic condition is that the waters flow by themselves in a natural manner, from lands to lands,* which implies that the waters flow or fall naturally on the properties. From this it may be inferred that the servitude is established for all waters which fulfill these conditions whether they be rain waters, flowing or descending by themselves, or waters from natural fonts, or filtrations

or melting; *whereby all waters spilled intentionally are excluded as well as all waters intentionally collected.''* Vol. 4, p. 683. (Italics supplied.)

The servitude established by Section 488, supra, is a natural servitude born from the natural position of the lands. The water that falls on higher land, if it flows naturally, must be received by the lower land and the owner of the lower land may not stop it. This limitation of one of the attributes of property, of the right to exclude all others from it, is what constitutes the servitude.

Assuming that the provisions of Section 488, supra, are applicable to urban property, can it be said in this case that the rain water which falls on plaintiff's lot *flows naturally and without the intervention of man* toward defendants' lot and that these are bound to receive them? Of course not. The lands involved in this litigation are no longer in their natural original position as they were before the houses, garages, pavements and walls were built, which according to evidence presented by the plaintiff himself now exist on the lot. The district court did not err in holding that Section 488, supra, is not the law applicable to this case.

Section 524 of the Civil Code (1930 ed.) which is the same as Section 588 of the Spanish Civil Code, provides:

"When the yard or court of a house is enclosed between other houses, and it be not possible to give an outlet through the house itself to the rainwater collected therein, the establishment of a servitude of drain may be demanded, giving an outlet to the waters at the point of the contiguous tenements where its egress may be the easiest, and establishing a conduit for the drain in such manner as to cause the least damage to the servient tenement, after payment of the proper indemnity."

In his commentaries to Section 588, Manresa says:

". . . . We have, in effect, a servitude which is imposed by force and for analogous reasons to that of right of way; in the same manner that a property entirely surrounded by other properties

must have a right of way to be worth anything, so the yard or corral of a house where surface waters collect and which have no private exit must be allowed to discharge its waters across the land situated between it and the public way. In a way this is one form of using and giving a servitude of waters, arising from the positions of the properties, even though it may not be a completely natural situation.

"The section correctly speaks of the yard or corral of a house; but of course this does not refer strictly or exclusively to these and so the servitude may also be created for a garden or an orchard which comply with the conditions of Section 588.

"In order that a servitude of drain may be created the following must be borne in mind:

"1.—That the yard or court of the house be entirely surrounded by other properties, there being no exit for the rain water—and only rain water, not, for example, of an industry—which may fall directly or from the house itself on it.

"2.—That the outlet or egress must be given: (a) at the most practical place, and (b) establishing the discharge outlet in such a way as to cause the least damage to the servient tenement.

"3.—That the corresponding indemnity must be paid.

"The work will be made at the expense of the owner of the dominant tenement, according to the natural exigencies of the servitude, the owner of the servient tenement being allowed to make any defensive construction or otherwise for the use of his property which will not disturb the normal use of the servitude."

See: *González* v. *Calderón*, 51 P.R.R. 148.

We agree with the lower court that the law regulating the respective rights of the litigants is Section 524, *supra*. And as no evidence was presented which would make possible the determination of the precise place through which the defendants should allow the discharge of the waters coming from plaintiff's property or to award the indemnization which the plaintiff should pay to the defendant, the lower court proceeded correctly in rendering the judgment appealed from, which must be affirmed.

Mr. Justice Hutchison and Mr. Justice De Jesús took no part in the decision of this case.